# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 08 CR 630 |
| ) | |
| CRISTOBAL VARGAS ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

A jury convicted Cristobal Vargas of attempting to possess more than 500 grams of cocaine with intent to distribute. Mr. Vargas has moved for entry of a judgment of acquittal or for a new trial. His motion did not clearly delineate the grounds for his motion other than a simple statement that the evidence was insufficient (the motion's summary of the trial made reference to some adverse rulings but did not say which Mr. Vargas contended were erroneous). His reply brief, however, identifies five grounds, and the Court will take that as a complete statement of the basis for the motion.

### Discussion

1 & 5. <u>Meeting of the minds / sufficiency of the evidence</u>. Mr. Vargas argues (issue #1) that the evidence failed to show a meeting of the minds between him and the government's informant Esteban Rojo for the sale (by the informant) and purchase (by Mr. Vargas) of cocaine. He also argues generally that the evidence was insufficient to convict (issue #5). These arguments are two variations on the same theme.

At this stage of the proceedings, the Court views the evidence in the light most favorable to the government and asks whether a rational jury could have found the

evidence sufficient to prove Mr. Vargas guilty beyond a reasonable doubt. *See, e.g., United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010). The answer to that question is yes.

Mr. Vargas (among other things) interprets his recorded conversations with Mr. Rojo as involving something other than cocaine; points out that the money he had at the final meeting with Mr. Rojo was more than $10,000 short of what was needed to buy three kilograms of cocaine; and says there was no evidence that he made an agreement with Mr. Rojo to buy cocaine from him. The jury, however, was not required to interpret the conversations as Mr. Vargas suggests. There was more than enough evidence to permit a reasonable jury to understand the conversations as a coded discussion to set up a cocaine deal and an agreement on terms. Mr. Vargas in fact did not have enough money to buy three kilos, but that does not make him any less guilty of attempting to purchase cocaine. The jury reasonably could find that he came to the meeting with the money he had, hoping to obtain the cocaine partly on credit, buy less than the full amount, or make some other arrangement.

A person attempts to possess cocaine with intent to distribute when he acts with the specific intent to commit the underlying offense and takes a substantial step toward its completion. *See, e.g., United States v. Magana*, 118 F.3d 1173, 1198 (7th Cir. 1997). As described above, the jury reasonably could find that Mr. Vargas specifically intended to possess more than 500 grams of cocaine – a distribution quantity – and came to the meeting with Mr. Rojo intending to carry out the offense. The evidence was sufficient to convict.

2. <u>Mr. Vargas's exculpatory post-arrest statement</u>.

Law enforcement officers were monitoring Mr. Vargas's meeting with Mr. Rojo, and after matters developed, they came to the scene *en masse* with guns drawn and took Mr. Vargas into custody. The following exchange occurred:

| | |
|---|---|
| Agent: | Let me see your hands! Let me see your hands! You too, big man. Get over here. |
| Agent: | I got one here. One in custody. |
| Agent: | What you guys doing in here? |
| Vargas: | I was meeting my friend over here. What's up? |
| Agent: | Is this dope? |
| Vargas: | No. |
| Agent: | Stand up, man. Stand up. Stand up. Turn around. |
| Agent: | Sure looks like dope to me! |
| Agent: | Whose dope is that? |
| Vargas: | There's no dope here. |
| Agent: | What is that? (inaudible) car seats. What is that? There's dope or money in there? What is that? |
| Vargas: | There's money (inaudible). |
| Agent: | How much money? |
| (inaudible) | |
| Vargas: | I was buying a truck, man! |
| Agent: | [You were] buying a car? Why? |
| (inaudible) | |

*See* Def. Mot., Ex. 1.

Prior to trial, the Court ruled that Mr. Vargas's exculpatory post-arrest statement that he was there to "buy[ ] a truck" was inadmissible hearsay. During trial, Mr. Vargas renewed his request to admit the statement, but the Court again denied the request.

Mr. Vargas's first argument is that his post-arrest exculpatory statement was admissible under the rule of completeness, as embodied in Federal Rule of Evidence 106. The government offered, and the Court admitted, earlier portions of the recording. Those portions, which came prior to law enforcement's arrival on the scene, involved Mr. Vargas's dealings with Mr. Rojo. There was a clear break in the discussion prior to the exculpatory statement at issue. The earlier conversation was between Mr. Vargas and Mr. Rojo; the later conversation was between Mr. Vargas and law enforcement. As was the case in *United States v. Lefevour*, 798 F.2d 977, 981-82 (7th Cir. 1986), the Vargas-Rojo conversation was complete in itself without reference to the later Vargas-law enforcement conversation.

Mr. Vargas's second argument is that the Court should have admitted his exculpatory statement under the "excited utterance" exception to the hearsay rule found in Federal Rule of Evidence 803(2). Rule 803(2) says that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. Fed. R. Evid. 803(2).

Mr. Vargas's post-arrest exculpatory statement did not meet the requirements of Rule 803(2). A statement is admissible under that Rule if a startling event occurred; the declarant made the statement while under the stress of excitement caused by the startling event; and the declarant's statement relates to the startling event. *United*

*States v. Wesela*, 223 F.3d 656 (7th Cir. 2000) Mr. Vargas's exculpatory statement concerning why he had come to meeting did not relate to the startling event – his arrest – rather, it related to earlier events. As such, it was not admissible under Rule 803(2). *See United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002).

For these reasons, the Court concludes that it properly excluded Mr. Vargas's post-arrest statement.

3. <u>Evidence regarding Escalera-Galvez</u>

Mr. Vargas argues that the Court improperly excluded evidence regarding a man named Escalera-Galvez. Mr. Escalera-Galvez drove Mr. Vargas to the meeting with Mr. Rojo. He was arrested along with Mr. Vargas but was later released.

The basis for Mr. Vargas's argument is a bit difficult to follow. In his motion, he seems to argue that Mr. Escalera-Galvez could have corroborated Mr. Vargas's version of why he was meeting with Mr. Rojo (to buy a truck, not cocaine). *See* Def. Motion ¶ 9. But Mr. Vargas never sought to call Mr. Escalera-Galvez to testify, and thus the Court had no occasion to preclude Mr. Vargas from doing so. Perhaps more importantly, Mr. Vargas has made no offer of proof indicating that Mr. Escalera-Galvez actually would have testified favorably to Mr. Vargas.

In his reply, Mr. Vargas seems to say that he could have elicited favorable information from the arresting law enforcement officers had he been permitted to do so. Again, however, Mr. Vargas provides no basis for the Court to find that the officers could have provided any favorable and admissible information regarding Mr. Escalera-Galvez. Any statements by Mr. Escalera-Galvez to the agents would have been inadmissible hearsay (though to be clear, Mr. Vargas does not identify any statements

5

that Mr. Escalera-Galvez made). And Mr. Vargas does not suggest that the officers could have or would have given testimony regarding Mr. Escalera-Galvez or why he was released that would have supported Mr. Vargas's theory of defense in any way.

In sum, Mr. Vargas has not shown that he was prejudiced by any ruling the Court made regarding Mr. Escalera-Galvez.

5. Motion for mistrial

On direct examination by the prosecution, Mr. Rojo gave the following testimony:

Q: Could you – let me turn back tot he meeting at the Wendy's. Did DEA agents provide you direction on that day?

A: Yes.

Q: And what were your – the instructions with respect to the investigation of Mr. Vargas?

A: I were [sic] to try to have a conversation with Mr. Vargas, try to get close to Mr. Vargas because of a possible – because of possible cocaine trafficking and try to go to his auto shop.

Q: Did those directions involve a Nextel phone?

A: Yes.

Aug. 25, 2010 Tr. 91.

At this point, defense counsel requested a sidebar and then moved for a mistrial, arguing that the prosecution had elicited information "about Mr. Vargas being involved in cocaine trafficking other than this case." *Id.* The Court denied the motion, stating:

I don't think it's unfairly prejudicial. There hasn't been any reference to a particular transaction. It was just he was told to get close to him because of the possibility of cocaine trafficking. So the objection is overruled

*Id.* 93. As the Court stated in that ruling, Mr. Vargas was in no way prejudiced by Mr. Rojo's testimony.

6

**Conclusion**

For the reasons stated above, the Court denies defendant's motion for a judgment of acquittal or for a new trial [docket no. 126]. Defendant's pretrial motion for additional discovery [docket no. 83] because it was ruled upon by the Court long before trial.

                                              /s Matthew F. Kennelly
                                              MATTHEW F. KENNELLY
                                              United States District Judge

Date: January 6, 2011